UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELBERT THOMAS MARTIN, | Case No. EDCV 08-0827-SJO (JTL) |
| Plaintiff, | MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| M. ROCHE, et al., | |
| Defendants. | |

On November 19, 2007, Elbert Thomas Martin ("plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. Section 1983 ("Complaint") with the United States District Court for the Eastern District of California. On June 20, 2008, the District Court for the Eastern District issued an Order transferring plaintiff's claims against Los Angeles and the California Men's Colony ("CMC") to the Central District. Thus, plaintiff's claims against the following CMC defendants were transferred to the Central District: D. Carey, Chairperson; T. Cook, Facility Captain; S. Stack, Chief Psychiatrist; Lieutenant G. Brownlee; M. Mee; D. Engler, CC II Specialist; M. Vela, CC II Specialist; Robert Meyers, M.D.; Correctional Officer D.L. England; Sergeant B. Dieball; D. Carey, Associate Warden; John Marshall; Warden; and Doe defendants Three, Four and Five. (See Complaint at 3, Attachment at i-iii). Plaintiff's claim against Doe defendant One, a Medical Technician Assistant at the Metropolitan Detention

Center[1] in Los Angeles, California ("MDC"), and Donald A. Ramberg, M.D., who operated on plaintiff at the Sierra Vista Regional Medical Center in San Luis Obispo, California, were also transferred to the Central District.  (See Complaint at 3).

In accordance with the provisions of the "Prison Litigation Reform Act of 1995" ("PLRA"), the Court has screened the Complaint before ordering service to determine whether the action (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915A; 42 U.S.C. §1997e(c)(1).

The Court's screening of plaintiff's Complaint under the foregoing statute is governed by the following standards: A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Because plaintiff is appearing pro se, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  Moreover, in determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

After careful review and consideration of the Complaint under the relevant standards, and for the reasons discussed below, the Court finds that plaintiff has failed to state a claim upon which relief may be granted and **ORDERS** the **COMPLAINT DISMISSED WITH LEAVE TO AMEND.**

---

[1] In the Complaint, plaintiff alleges he was incarcerated at the Federal Detention Center located at 535 North Alameda Street in Los Angeles, California. (Complaint at 3).  The Federal Detention Center at that location is known as the Metropolitan Detention Center ("MDC") and will be referred to as such in this Order.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff's claims arise out of his medical treatment and the conditions of confinement while incarcerated at the MDC in Los Angeles, California, the High Desert State Prison in Susanville, California, the Correctional Training Facility in Soledad, California, the CMC in San Luis Obispo, California; Sierra Vista Regional Medical Center in San Luis Obispo, California; and the California Correctional Institution in Tehachapi, California. Plaintiff names twenty-nine (29) defendants in his Complaint.[2] (See Complaint at 3, Attachment at i-iii).

Plaintiff alleges that on January 6, 2002, while incarcerated at the MDC, he complained of pain resulting from a pre-existing back injury and Doe defendant One, a medical technician assistant, prescribed him 800 milligrams of Neurontin. (Complaint at 3). Plaintiff experienced adverse side-effects from the Neurontin causing plaintiff to "stay thirsty, increase saliva and blisters in plaintiff's mouth" as well as dizziness, weight loss, chills and joint stiffness. (Complaint at 3, Attachment at 1).

On June 13, 2002, plaintiff was transferred to High Desert State Prison. Plaintiff's prescription for Neurontin was discontinued and he complained of back pain to medical staff numerous times. On October 5, 2002, plaintiff had an MRI exam and was again prescribed Neurontin, which he took for the next thirty-eight (38) months. (Complaint, Attachment at 1). During that time, plaintiff experienced severe side-effects from the Neurontin, including severe testicular swelling that impaired plaintiff's ability to stand, stoop and walk. (Id.). On December 21, 2005, plaintiff was transferred to the California Training Facility, where he submitted numerous medical forms documenting his pain and complaints. (Id. at 2).

On November 27, 2006, plaintiff was transferred to CMC. (Id. at 2-3). Plaintiff was placed in a holding cage for approximately 90 minutes which caused him to suffer from numbness, swelling, and excruciating pain. (Id. at 3). Upon arrival at CMC, plaintiff asked to see a psychiatric technician and, after meeting with the psychiatric technician, plaintiff was

---

[2] Pursuant to the June 20, 2008 Order issued by the District Court for the Eastern District, this Court addresses only the claims against defendants at the MDC, CMC and Sierra Vista Regional Medical Center.

1  transferred to the psychiatric ward. (Id. at 3-4). Plaintiff was placed in a one-man cell and
2  isolated for 72 hours without clothes, shoes, socks, boxer shorts or a mattress, and forced to
3  show prison staff some form of movement every hour. (Id. at 4). As a result, plaintiff suffered
4  from "strange feelings, fatigue, anxiety, troubled desire, confusional [sic] state, animosity, and
5  hostility." (Complaint, Attachment at 4). Because plaintiff had only "a sheet of metal" to sleep
6  on, his back pain became worse and his right testicle became swollen. (Id. at 4, 6).

7  Thereafter, plaintiff was placed on observation for ten days and moved to four different
8  cells during the ten-day period. (Id.). Plaintiff informed Doe defendants Three, Four and Five
9  that he was Muslim and requested administrative segregation property, including a copy of the
10 Holy Quran and a special religious diet. (Id. at 5, see Exhs. K, L). Thereafter, plaintiff alleges
11 discriminatory comments and acts were directed at plaintiff by Doe defendants Four and Five.
12 Doe defendant Four told plaintiff his special religious diet card was "no good in here . . . this is
13 Ad. Seg. . . . you'll eat what we give you," and Doe defendant Five added, "So . . . you muslims
14 don't want to eat our food . . . well, that's to [sic] bad . . . because, the only thing you'll get is
15 what my partner just told you . . . and if you don't like that . . . to [sic] bad." (Id. at 5). Plaintiff
16 told Doe defendant Three, a sergeant, about his special religious diet card and while Doe
17 defendant Three told plaintiff he would look into it, he never replied to plaintiff. In addition,
18 plaintiff alleges that Doe defendant Four admitted to spiting in plaintiff's dinner meal tray. (Id.
19 at 5-6).

20 Plaintiff alleges that when he was transferred to CMC, defendants Carey, Cook, Stack,
21 Brownlee and Mee all knew of plaintiff's role in manipulating a locking bar mechanism of a cell
22 door while at the California Training Facility and held plaintiff in administrative segregation for
23 an additional thirteen (13) days. (Id. at 6, see Exh. M).

24 On December 13, 2006, plaintiff was transferred to Sierra Vista Regional Medical Center
25 for surgery. (Id. at 6, Exh. N). Defendant Donald A. Ramberg, M.D., performed surgery on
26 plaintiff's back using procedures to which plaintiff had not agreed, and prescribed plaintiff
27 Gabapentin, Limitor and Tylenol. (Id. at 7, Exhs. Q, R, S). Plaintiff returned to CMC on
28 December 15, 2006, and was examined by D.M. Perry, M.D. Dr. Perry asked plaintiff why he

was operated on and stated that he would not have operated on plaintiff at least until the lesions that were present on plaintiff's tongue had healed. (Id. at 7). Dr. Perry changed plaintiff's pain medication from Gabapentin to Darvocet, and later to Vicodin, which caused sharp pain in plaintiff's left leg and thigh. (Complaint, Attachment at 8, see Exh. V).

Thereafter, plaintiff filed a grievance requesting a walking cane, double mattress and/or egg crate mattress. Plaintiff appealed its denial to the second level. (Complaint, Attachment at 8, Exh. W).

On January 21, 2007, plaintiff filed a grievance for the loss of legal materials while in administrative segregation and appealed its denial to the third level. (Complaint at 2, Attachment at 8, Exh. X).

On February 20, 2007, plaintiff was transferred to the California Correctional Institution in Tehachapi, California. (Complaint, Attachment at 8).

Plaintiff seeks compensatory and punitive damages and injunctive relief. (Petition at 3, Attachment at 10-12).

**DISCUSSION**

**I. PLAINTIFF MUST NAME ALL DEFENDANTS IN THE CAPTION**

Plaintiff has made allegations in his Complaint against defendants not named in the caption of the Complaint. Plaintiff names only John Doe #1, M. Roche, MD, R. Cox, MD and T. Friederichs, MD as defendants in the caption of the Complaint. (Complaint at 1). Plaintiff names a number of persons as defendants in the body of the Complaint including D. Carey, T. Cook, S. Stack, G. Brownlee; M. Mee; D. Engler, M. Vela, Robert Meyers, D.L. England, B. Dieball, John Marshall, Doe defendants Three, Four and Five, and Dr. Ramberg, but fails to include their names in the caption. (See Complaint at 3, Attachment at i-iii; see also Complaint, Attachment at 6-7).

If plaintiff files an amended complaint, he must include in the caption the names of all the defendants against whom he is asserting a claim. See Fed. R. Civ. P. 10(a); Local Rule 11-3.8(d); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing

action for refusal to comply with court orders to name defendants in the caption). The Court will not order the United States Marshal to serve the Complaint on any defendant not named in the caption.

## II. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT BASED ON THE CONDITIONS OF HIS CONFINEMENT AGAINST ANY DEFENDANT

Under the Constitutional bar against cruel and unusual punishment, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). The more basic the need, the shorter the time it can be withheld. Id. at 732. "More modest deprivations" can form the basis of a constitutional deprivation only if they are lengthy or ongoing. Id.

Here, plaintiff alleges that he was held at CMC for 72 hours without clothes, shoes, socks, boxer shorts or a mattress, and was forced to show the officers some form of movement every hour on the hour. Plaintiff alleges that these conditions caused back pain and swelling in his right testicle. "Extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). Accordingly, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (internal quotations omitted). The Court finds that although plaintiff's allegations regarding the above-described conditions may be sufficient to state an Eighth Amendment claim at the pleading stage, this claim is not properly asserted against any of the defendants identified by plaintiff. A person is liable under Section 1983 if he or she "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do" that causes the complained-of deprivation. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (Section 1983 liability requires personal participation in deprivation). In order to hold a particular defendant liable for the alleged Eighth Amendment violation, plaintiff must allege (and ultimately prove) that the complained-of condition was within the scope of that

1 defendant's duties and responsibilities. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988)
2 (holding that the inquiry into causation requires an individualized consideration of each
3 defendant's duties and responsibilities). Here, plaintiff failed to allege that the complained-of
4 conditions were within the scope of any defendant's duty or responsibility. Thus, plaintiff has
5 failed to allege acts sufficient to state a claim against any defendant based on the conditions
6 of his confinement. A defendant that had no responsibility for or ability to remedy the
7 complained of conditions cannot be held liable for failure to do so.

8 Furthermore, in order for injuries stemming from the conditions of confinement to
9 constitute cruel and unusual punishment in violation of the Eighth Amendment, prison officials
10 may be held liable only if they acted with "deliberate indifference to a substantial risk of serious
11 harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In addition, the alleged
12 deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834.
13 The prison official must know of and disregard an excessive risk to inmate health or safety.
14 Farmer, 511 U.S. at 837; see Leer, 844 F.2d at 633 (holding that the deliberate indifference
15 standard requires a causal link between deliberate indifference on the part of the defendant and
16 the alleged Eighth Amendment deprivation).[3]

17 ///
18 ///
19 ///

---

[3] To the extent that plaintiff is raising a due process claim relating to his confinement in administrative segregation, the Court notes that generally, a prisoner has no liberty interest in avoiding transfer to more restrictive conditions of confinement, such as a transfer from the general population to segregation, unless he can show an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Wilkinson v. Austin, 545 U.S. 209, 221-23 (2005); Sandin v. Conner, 515 U.S. 472, 484-86 (1995) (holding that ordinarily, disciplinary classification transfers to other more restrictive facilities, or other housing within a prison, do not raise liberty interests under the due process clause of the Fourteenth Amendment); see May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence). The Supreme Court has held that subjecting a prisoner to punitive administrative segregation did not implicate the Due Process Clause because such segregation was "within the expected perimeters of the sentence imposed." Sandin, 515 U.S. at 485; see Hudson, 503 U.S. at 9 (1992) (routine discomfort is part of the penalty that criminal offenders pay for their offenses against society).

### III. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT FOR INADEQUATE MEDICAL CARE

The state must provide medical care to prisoners and detainees because their confinement has deprived them of the ability to secure medical care for themselves. Estelle v. Gamble, 429 U.S. 97, 103 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). A prisoner asserting a Section 1983 claim for denial of medical care must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Estelle, 429 U.S. at 104; McGuckin, 974 F.2d at 1059.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." Id. at 1059. However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference. Estelle, 429 U.S. at 105. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105; see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.")

Applying these principles to plaintiff's allegations, the Court concludes that plaintiff has failed to allege deliberate indifference. Plaintiff alleges that he experienced adverse side-effects

from Neurontin and Vicodin, that Dr. Ramberg did not perform plaintiff's surgery using procedures plaintiff had agreed to, and that Dr. Perry opined that Dr. Ramberg should not have performed surgery on plaintiff. These allegations do not state acts or omissions sufficiently harmful to evidence deliberate indifference to a known serious medical need. A difference of opinion between an inmate and medical staff, or among the inmate's physicians, as to the nature of appropriate medical treatment is insufficient as a matter of law to constitute deliberate indifference. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was "medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." Toguchi, 391 F.3d at 1058 (quoting Jackson, 90 F.3d at 332).

**IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT**

Plaintiff asserts that he was denied a special religious diet based on his beliefs as a Muslim. Plaintiff contends that Doe defendants Three, Four and Five denied him a special religious diet and that his request for a copy of administrative segregation property, including a copy of the Holy Quran, was improperly denied.

These allegations do not allege a First Amendment claim for violation of plaintiff's right to free exercise of religion. Plaintiff has not sufficiently alleged that defendants prevented him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). In order to meet this standard, defendants' actions must have been "more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." Id., Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987). Plaintiff has failed to allege that a special diet is mandated by his faith or how his attempt to obtain a copy of the Holy Quran relates to a central tenet of his religious faith. Nor has plaintiff stated facts sufficient to state that the actions of Doe defendants Three, Four and Five imposed a substantial burden on him.

In addition, with regard to the allegations of discriminatory comments and acts that Doe defendants Four and Five directed at plaintiff, verbal harassment alone does not violate the Constitution. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (no constitutional claim based on abusive language directed at the prisoner's religious and ethnic background).

## V. PLAINTIFF HAS FAILED TO PROPERLY STATE A CLAIM AGAINST ANY DEFENDANT

Here, plaintiff has not alleged acts sufficient to link the alleged violation of his rights to any defendant. A person "subjects" another to the deprivation of a constitutional right within the meaning of Section 1983 if he or she "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do" that causes the complained-of deprivation. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (Section 1983 liability requires personal participation in deprivation).

Plaintiff has not adequately stated a claim for relief under Section 1983; he has not alleged that any defendants acted, participated in another's act, or omitted to perform an act that he or she was legally required to do. See Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) (in an action brought under 42 U.S.C. Section 1983, plaintiff must establish causation, as by demonstrating the duties and responsibilities of defendant). Thus, plaintiff's claims must be dismissed.

\* \* \* \* \* \* \* \* \*

Because plaintiff may be able to cure the deficiencies of the complaint by amendment, the Court will afford plaintiff an opportunity to attempt to do so. See Noll, 809 F.2d at 1448. The Complaint, therefore, is **DISMISSED WITH LEAVE TO AMEND**.

If plaintiff desires to pursue this action, plaintiff is **ORDERED** to file a First Amended Complaint within thirty (30) days of the date of this Order, remedying the deficiencies discussed above.

If plaintiff chooses to file a First Amended Complaint, it should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself

without reference to the original complaint or any other pleading, attachment or document. The Clerk is directed to provide plaintiff with a blank Central District civil rights complaint form, which plaintiff will need to completely fill out and resubmit.

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint, the Court will recommend that the action be dismissed on the grounds set forth above and for failure to diligently prosecute.**

DATED: July 9, 2008

                                             /s/
                                  JENNIFER T. LUM
                                  UNITED STATES MAGISTRATE JUDGE