# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELBERT THOMAS MARTIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. ROCHE, et al.,<br><br>　　　　　Defendants. | Case No. EDCV 08-0827-SJO (JTL)<br><br>MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

　　　　On November 19, 2007, Elbert Thomas Martin ("plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. Section 1983 ("Complaint") in the United States District Court for the Eastern District of California. On June 20, 2008, the District Court for the Eastern District issued an order transferring the claims arising in this judicial district to this court.

　　　　On July 19, 2008, the Court dismissed the Complaint, with leave to amend, pursuant to the screening provisions of the Prison Litigation Reform Act of 1995 ("PLRA"). On August 13, 2008, plaintiff filed a First Amended Complaint.

　　　　In accordance with the provisions of the PLRA, the Court has screened the First Amended Complaint before ordering service to determine whether the action (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief

against a defendant who is immune from such relief. See 28 U.S.C. § 1915A; 42 U.S.C. §1997e(c)(1).

The Court's screening of plaintiff's First Amended Complaint under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Because plaintiff is appearing pro se, the Court must construe the allegations of the First Amended Complaint liberally and must afford plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). Moreover, in determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

After careful review and consideration of the First Amended Complaint under the relevant standards, and for the reasons discussed below, the Court finds that plaintiff has failed to state a claim upon which relief may be granted and **ORDERS** the **FIRST AMENDED COMPLAINT DISMISSED WITH LEAVE TO AMEND.**

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiff's claims arose while incarcerated at the Metropolitan Detention Center ("MDC") in Los Angeles and the California Men's Colony ("CMC") in San Luis Obispo. (First Amended Complaint, Facts, ¶¶ 1, 13).

Plaintiff's claims arising out of his detention at MDC are asserted solely against defendant John Doe No. 1. (First Amended Complaint, Parties, ¶ 1). Plaintiff's claims arising out of his incarceration at CMC are asserted against the following defendants: Warden John Marshall; Associate Warden J. Carey; Captain T. Cook; S. Stack, chief psychiatrist; Lieutenant

G. Brownlee; M. Mee; Dr. Donald A. Ramberg; D. Engler, appeals coordinator; M. Vela, appeals coordinator; Dr. Robert Meyers, health care manager; correctional officer D.L. England; correctional sergeant B.G. Dieball; and John Doe Nos. 3, 4, and 5. (First Amended Complaint, Parties, ¶¶ 2-17).

Plaintiff alleges that, on January 6, 2002, while confined at MDC, he complained to John Doe No. 1, a medical technician assistant, that he was suffering severe back pain. (First Amended Complaint, Facts, ¶¶ 1-7). John Doe No. 1 provided plaintiff with Neurontin medication. (Id. at ¶ 8). Plaintiff experienced adverse side effects. (Id. at ¶¶ 8-10). During the next five months he complained about the side effects to John Doe No. 1, who told him to continue taking the medication. (Id. at ¶¶ 8-10).

On June 13, 2002, plaintiff was transferred to the custody of the California Department of Corrections. (First Amended Complaint, Facts, ¶ 12). On November 27, 2006, he was transferred to CMC. (Id. at ¶ 13). Upon arrival at CMC, he was interviewed by Dr. Viggianelli. (Id. at ¶ 15). Plaintiff advised Dr. Viggianelli that he was scheduled for back surgery within two weeks, and Dr. Viggianelli issued him a "chrono" for a "lower bunk, lower tier" housing assignment. (Id. at ¶¶ 16, 17, Exh. C).

Plaintiff was then taken to the medical segregation unit. (First Amended Complaint, Facts, ¶ 18). He was in segregation because he was suspected of manipulating his cell lock mechanism. (First Amended Complaint, Exh. B). On November 28, 2006, plaintiff asked to see a psychiatric technician. (First Amended Complaint, Facts, ¶ 22). The psychiatric technician asked him whether he felt like killing himself or others, and plaintiff responded that he did not know what he would do. (Id. at ¶¶ 23, 24). Half an hour later, plaintiff was transferred to the psychiatric ward. (Id. at ¶ 25).

In the psychiatric ward, plaintiff was placed in a one-man cell that only had a top bunk. (First Amended Complaint, Facts, ¶ 26). Plaintiff advised the correctional officer that he had a lower bunk "chrono," and the officer promised to look into it. (Id. at ¶¶ 27-28). Plaintiff was asked to strip and give his clothes to the correctional officer, and despite his protestations that he was scheduled for back surgery, he was not provided with a mattress. (Id. at ¶¶ 29-34).

On December 2, 2006, plaintiff was seen by the psychiatric committee, and defendant Stack, the chief psychiatrist, told him that he would be returned to administrative segregation but would be subject to hourly observation for the next ten days, i.e., each hour, on the hour, he would have to show a correctional officer some type of physical movement. (First Amended Complaint, Facts, ¶¶ 35-36). Plaintiff was then taken to an administrative segregation cell, where he advised defendants John Doe Nos. 3, 4, and 5 that he was a Muslim and had been issued a card entitling him to a special religious diet. (Id. at ¶ 37, Exh. D). He also requested "special administrative segregation property," including a copy of the Quran. (First Amended Complaint, Facts, ¶ 37). The officers scoffed and one of them spat into his food. (Id. at ¶¶ 38-46).

Thereafter, plaintiff was moved to four different cells in ten days. (First Amended Complaint, Facts, ¶ 47). On December 7, 2006, he appeared before the Institutional Classification Committee ("ICC"). (Id. at ¶ 48). Captain Cook advised him that he would be housed in the general population because his former cellmate had told the ICC that plaintiff was not involved in manipulating the lock mechanism. (Id. at ¶ 52). Nevertheless, even though plaintiff had been cleared of all charges, he remained in administrative segregation for six more days. (Id. at ¶ 55).

On December 13, 2006, correctional officer England came to plaintiff's cell and told him that he would be transported to the Sierra Vista Hospital for back surgery. (First Amended Complaint, Facts, ¶ 57). Plaintiff inquired about the safe-keeping of his legal papers, and officer England told him that his cell would be left open for three days until he returned. (Id. at ¶ 59). Plaintiff placed his legal papers in a bag and wanted to give them to officer England, but officer England directed him to leave them in the cell. (Id. at ¶¶ 60-62). Plaintiff's legal papers were lost and never found. (First Amended Complaint, Claims at 20, Relief at 26, Exh. KK).

On December 13, 2006, Dr. Ramberg performed the surgery, and on December 15, 2006, plaintiff was discharged with a back brace and pain medication. (First Amended Complaint, Facts, ¶¶ 71-78, Exhs. I, J). He was taken to the CMC clinic, where Dr. Perry

expressed surprise that Dr. Ramberg had operated while plaintiff was suffering from lesions in his mouth. (First Amended Complaint, Facts, ¶¶ 79-82, Exh. K).

On December 15, 2005, plaintiff was admitted to the CMC hospital, and on December 18, 2006, he was seen by Dr. Perry. (First Amended Complaint, Facts, ¶¶ 84-85). Dr. Ramberg had prescribed Gabapentin, Limitor and Tylenol. (First Amended Complaint, Facts, ¶ 78, 83, Exh. L). Dr. Perry prescribed Vicodin for plaintiff's continuing leg pain. (First Amended Complaint, Facts, ¶ 86, Exh. N). On December 19, 2006, plaintiff was discharged, using a walker. (First Amended Complaint, Facts, ¶ 89).

Plaintiff then disputed his housing placement, which he viewed as incompatible with his classification rating, and filed a request for an accommodation under the American Disability Act ("ADA"), describing his disability as back and leg pain and requesting a double or eggshell mattress and a walking cane, since he no longer had a walker. (First Amended Complaint, Facts, ¶¶ 901-05, Exhs. W, X, Y, Z, AA, BB). Plaintiff also filed a grievance requesting resumption of his pain medication. (First Amended Complaint, Facts, ¶¶ 91-93, Exh. P). On February 20, 2007, while these grievances were pending, plaintiff was transferred to the California Correctional Institution in Tehachapi, California ("Tehachapi"). (First Amended Complaint, Facts, ¶ 97).

Plaintiff then received a response that his grievance concerning pain medication was partially granted in that his pain medication would be resumed. (First Amended Complaint, Facts, ¶ 121, Exh. GG). Plaintiff was also interviewed regarding his request for a cane and double mattress. (First Amended Complaint, Facts, ¶ 122, Exh. HH). He stated that he no longer required the cane and mattress because six months had passed since he submitted the request and the injury was healing. (First Amended Complaint, Facts, ¶¶ 122-23). In addition, plaintiff filed a grievance regarding the loss of the legal papers he had left in his cell and appealed it to the third level. (First Amended Complaint, Facts, ¶¶ 94-100, 107-119, 131, Exhs. Q, S, U, V).

On July 10, 2007, plaintiff had a video conference consultation with a neurosurgeon, who told him that he wanted to perform additional back surgery on plaintiff to correct the results of

1 the first surgery. (First Amended Complaint, Facts, ¶¶ 123-26, Exhs. II, JJ). The surgeon told plaintiff that the state had asked him to look at plaintiff's medical file, and told him that if he did not have additional surgery, his problem could get worse. (First Amended Complaint, Facts, ¶¶ 127-30). Plaintiff initially agreed to be scheduled for further back surgery but then refused. (Id. at ¶¶ 130, 134). Plaintiff is a veteran and wanted to have the procedure performed at a Veteran's Hospital, but his request was denied. (Id. at ¶¶ 135-36). He then requested a second medical opinion. (Id. at ¶¶ 137-38). The second neurosurgeon recommended the same surgery as the first and told plaintiff that his chances of mobility were fifty-fifty. (Id. at ¶¶ 139-44). Plaintiff declined the surgery. (Id. at ¶ 145).

Plaintiff asserts claims under the First, Eighth, and Fourteenth Amendments and under the ADA. (First Amended Complaint, Claims, at 17-27). He seeks compensatory and punitive damages and injunctive relief directing defendants to refrain from using physical force against him and from confiscating his legal books and papers. (First Amended Complaint, Relief, 26-27).

## DISCUSSION

### I.  PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM BASED UPON CONDITIONS OF HIS CONFINEMENT

An Eighth Amendment claim challenging conditions of confinement must satisfy both objective and subjective criteria. Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, the deprivation must be sufficiently serious to implicate the Eighth Amendment. Id. The conditions of a prisoner's confinement amount to cruel and unusual punishment only if he has been deprived of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Second, prison officials are liable for the deprivation only if they acted with deliberate indifference to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 828 (1994). Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and also draw the inference." Id. at 837.

1  Under the Eighth Amendment, prison officials must provide prisoners with food, clothing,
2 shelter, sanitation, medical care and personal safety. See Farmer, 511 U.S. at 832. The
3 circumstances, nature, and duration of a deprivation of these necessities must be considered
4 in determining whether a constitutional violation has occurred. Johnson v. Lewis, 217 F.3d 726,
5 731 (9th Cir. 2000). The more basic the need, the shorter the time it can be withheld. Id. at
6 732. "More modest deprivations" can form the basis of a constitutional deprivation only if they
7 are lengthy or ongoing. Id.

8  Plaintiff contends that his Eighth Amendment rights were violated when defendants
9 deprived him of a mattress and clothing for 72 hours.[1] (First Amended Complaint, Facts, ¶¶ 30-
10 33, Claims at 17-18, 19, Relief at 26). The Ninth Circuit has held that an allegation that an
11 inmate slept without a mattress for a single night was insufficient to state an Eighth Amendment
12 violation. Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988), judgment vacated on
13 other grounds, Hernandez v. Denton, 493 U.S. 801 (1989). However, plaintiff alleges that he
14 was without a mattress for three days, at a time when his back problems were such that he had
15 been scheduled for back surgery and issued a lower bunk chrono. (First Amended Complaint,
16 Facts, ¶¶ 16, 17). Moreover, plaintiff was not provided with a lower bunk. (Id. at ¶¶ 26, 36).
17 Under these circumstances, plaintiff's allegations regarding the three-day deprivation of a
18 mattress meet the objective criteria for an Eighth Amendment violation.

19  Plaintiff, however, has not alleged deliberate indifference on the part of any defendant.
20 See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (Section 1983 liability requires personal
21 participation in deprivation). Plaintiff alleges that he advised an unidentified correctional officer
22 of his scheduled back surgery, but that officer is not a defendant in this action. Plaintiff does
23 not allege that any defendant knew of his back condition and nevertheless determined that
24 plaintiff should remain without a mattress for three nights. Farmer, 511 U.S. at 837. Thus,

---

27 [1] The Court will address plaintiff's related claim, that defendants failed to provide him with a lower bunk in violation of his physician's orders, in connection with his claims for deliberate
28 indifference to his medical needs.

7

plaintiff has not satisfied the subjective component for an Eighth Amendment claim based on the failure to provide him with a mattress.

In regards to plaintiff's claim challenging the removal of his clothing, denial of adequate clothing may violate the Eighth Amendment under certain circumstances. Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994). This Eighth Amendment claim, however, fails for the same reason as plaintiff's claim pertaining to the lack of a mattress: plaintiff has not alleged deliberate indifference on the part of any defendant.

Plaintiff also contends that his Eighth Amendment rights were violated when John Doe No. 4 spat into his food, making it impossible for plaintiff to eat it. (First Amended Complaint, Facts, ¶¶ 41, 42). Deprivation of a single meal does not constitute an injury serious enough to support an Eighth Amendment claim. See Hernandez, 861 F.2d at 1424; see also Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999) (denial of eight meals over a seven-month period did not violate the Eighth Amendment); Glover v. Evans, 2007 WL 3022249, *1 (N.D. Cal., Oct. 15, 2007) (failure to provide inmate with vegetarian meal on a single occasion was not of constitutional magnitude).

Plaintiff, therefore, fails to allege Eighth Amendment claims based on the above described deprivations against any of the defendants.

## II. PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR INADEQUATE MEDICAL CARE

Plaintiff contends that his Eighth Amendment rights were violated when: (1) he was not provided with a lower bunk during his 72-hour stay in the psychiatric ward; (2) Dr. Ramborg performed back surgery on him; and (3) defendants failed to provide him with a double mattress and a cane after the surgery.[2] (First Amended Complaint, Claims, at 17-24).

---

[2] Plaintiff also contends that defendant John Doe No. 4's treatment of his back pain during his 2002 detention at MDC violated the Eighth Amendment. (First Amended Complaint, Facts, ¶¶ 1-11, Claims at 17). The Court will not screen this claim at this time because it is not asserted against any named defendant. The Court also notes that even if plaintiff succeeds in identifying John Doe No. 4, his claim may well be time-barred.

### A. Applicable Law

The state must provide medical care to prisoners and detainees because their confinement has deprived them of the ability to secure medical care for themselves. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976); <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999). A prisoner asserting a Section 1983 claim for denial of medical care must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 106. A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Techs, Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. <u>Estelle</u>, 429 U.S. at 104; <u>McGuckin</u>, 974 F.2d at 1059.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. <u>McGuckin</u>, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." <u>Id.</u> at 1059. However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference. <u>Estelle</u>, 429 U.S. at 105. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Id.</u> at 105; <u>see also</u> <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").

### B. Lower Bunk and Pain Medication

Plaintiff contends that his Eighth Amendment rights were violated when he was placed for 72 hours in a psychiatric ward cell without a lower bunk or a mattress, and was not provided with pain medication. (First Amended Complaint, Facts, ¶¶ 25-35, Claims at 17-18). Plaintiff

asserts this claim against defendant Stack, the chief psychiatrist. (First Amended Complaint, Claims at 17-18).

When plaintiff was placed in the isolation cell, he had a lower bunk "chrono" and was scheduled for back surgery in two weeks. (First Amended Complaint, Facts, ¶¶ 16-17). Under these circumstances, his three-day placement in a cell without a lower bunk or a mattress implicated a serious medical need. However, plaintiff has not alleged that defendant Stack, or any other defendant, was aware of his lower bunk "chrono" or scheduled back surgery, and despite that knowledge decided not to provide plaintiff with a lower bunk or a mattress. See McGuckin, 974 F.2d at 1060. Plaintiff only alleges that an unnamed correctional officer, who is not a defendant, knew of his lower bunk "chrono" and his planned surgery and nevertheless told him that he would have to remain under these conditions for 72 hours. Thus, plaintiff has not alleged deliberate indifference to his serious medical needs on the part of defendant Stack, or any other named defendant. See Terry v. Woodford, 2008 WL 1734215, *3 (S.D. Cal., Apr. 11, 2008) (dismissing Eighth Amendment claim based on upper bunk assignment when plaintiff failed to identify any defendant "who was aware of his serious medical need to be assigned a lower bunk and deliberately ignored" the risk).

As for the alleged failure to provide plaintiff with his medication, plaintiff does not allege what the medication was, or what ill effects he suffered from the three-day deprivation. Moreover, plaintiff does not allege that defendant Stack, or any other defendant, knew that he was not receiving his medicines. Plaintiff, therefore, has not alleged an Eighth Amendment claim on this basis.

**C.  Back Surgery**

Plaintiff contends that Dr. Ramberg demonstrated deliberate indifference when he performed back surgery on plaintiff because he operated "on the wrong side" of plaintiff's back and at a time when plaintiff was suffering from "blister-type lesions" in his mouth as well as nocturnal asthma. (First Amended Complaint, Claims at 21-22). Plaintiff alleges that another physician, Dr. Perry, expressed surprise that Dr. Ramberg operated on him under these circumstances. (First Amended Complaint, Facts, ¶¶ 80-82). He further alleges that the

surgery has caused him pain and impairment of mobility, and that two neurosurgeons have advised him that he needs another surgery to correct the effects of the first, one of them stating that he "wouldn't have done what [Dr. Ramberg] did." (First Amended Complaint at ¶¶ 124-25, 139-44, Claims at 22).

A difference of opinion between an inmate and medical staff, or among the inmate's physicians, as to the nature of appropriate medical treatment is insufficient as a matter of law to constitute deliberate indifference. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was "medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." Toguchi, 391 F.3d at 1058 (quoting Jackson, 90 F.3d at 332). This is a difficult standard to meet. See Toguchi, 391 F.3d at 1060 ("Deliberate indifference is a high legal standard.") Nevertheless, at the screening stage of this action, construing plaintiff's allegations liberally, the Court concludes that his allegations are sufficient to state an Eighth Amendment claim against Dr. Ramberg.

Plaintiff, therefore, may reallege his claim against Dr. Ramberg in his Second Amended Complaint.

### D. Post-Surgery Care

Plaintiff contends that defendants violated his Eighth Amendment rights when they failed to provide him with a double mattress and a walking cane after his back surgery. (First Amended Complaint, Claims at 22). Plaintiff submitted a request for a cane and double mattress on December 26, 2006. (First Amended Complaint, Facts, ¶ 93, Exh. P). He was interviewed regarding his request on June 26, 2007, and stated that, after six months, he no longer required the cane and double mattress. (First Amended Complaint, Facts, ¶ 122, Exh. HH). By that time plaintiff was no longer at CMC, having been transferred to Tehachapi on February 20, 2007. (First Amended Complaint, Facts, ¶ 97). On June 26, 2007, Dr. Meyers,

the CMC health care manager, partially granted plaintiff's appeal on the ground that plaintiff no longer required the requested accommodations. (First Amended Complaint at ¶ 122).

Plaintiff's Eighth Amendment claim on this basis remains deficient. Although plaintiff may well have had a serious medical need for a double mattress and a walking cane in the weeks after his back surgery, he has not alleged deliberate indifference on the part of Dr. Meyers, the CMC health care manager, or any other defendant. The First Amended Complaint contains no factual allegations from which the Court could infer that Dr. Meyers, or any other defendant, knew of and purposefully disregarded plaintiff's serious medical need for a double mattress and/or a walking cane. See McGuckin, 974 F.2d at 1060.

Plaintiff, therefore, fails to state an Eight Amendment claim based on the failure to provide him with a double mattress or walking cane.

### III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ADA

Plaintiff contends that Dr. Meyers' failure to provide him with post-surgery accommodations such as a cane and a double mattress violated the ADA. (First Amended Complaint, Claim at 24, 25).

Title II of the ADA prohibits public entities from discriminating on the basis of disability. 42 U.S.C. § 12132. To assert a claim under the ADA, plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs or activities; (3) he was excluded or otherwise discriminated against by the public entity; and (4) the exclusion or discrimination occurred solely by reason of his disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002), cert. denied, 538 U.S. 921 (2003). State prisons fall within the statutory definition of "public entity." Pennsylvania Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998).

Damages are not available under Title II of the ADA absent a showing of discriminatory intent. Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). The test for intentional discrimination under the ADA is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d

1124, 1138 (9th Cir. 2001). Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely; and (2) failure to act upon that likelihood. Duvall, 260 F.3d at 1139. The first prong of the deliberate indifference test is satisfied when the plaintiff has alerted the entity to his need for an accommodation, or where the need for accommodation is obvious. Id. The second prong requires a failure to act that is more than negligent and involves an element of deliberateness. Id,

Here, plaintiff has not alleged the requisite discriminatory intent necessary to support a claim for damages under the ADA. Plaintiff does not allege that his request for accommodation was denied; he only alleges that, by the time he was interviewed regarding the request six months later, he no longer needed the requested accommodation. However, plaintiff does not allege that he made any efforts to obtain a cane and double mattress, or to obtain an earlier decision on his request, during this six-month period. Contrast Duvall, 260 F.3d at 1140 (defendants had notice of plaintiff's need for accommodation and despite his repeated requests failed to take the necessary action). Moreover, plaintiff was transferred to another prison less than two months after making the request. (First Amended Complaint, Facts, ¶ 97). Under these circumstances, plaintiff's allegations are not sufficient to show deliberate indifference on the part of Dr. Meyers, or any other defendant. Id. at 1139.

Plaintiff, therefore, fails to state a claim under the ADA.

### IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT

Plaintiff contends that his First Amendment right to free exercise of religion was violated when defendants John Doe Nos. 3, 4, and 4 denied his request for a special religious diet and a copy of the Quran while he was in administrative segregation. (First Amended Complaint, Facts ¶¶ 37-46, Claims at 17).

In order to establish a violation of his First Amendment right to free exercise of religion, plaintiff must show that defendants burdened the practice of his religion by preventing him from engaging in activities that he sincerely believes are mandated by his faith, without any justification reasonably related to penological interests. Shakur v. Schriro, 514 F.3d 878, 884-

85 (9th Cir. 2008). In Shakur, the Ninth Circuit held that the prisoner is not required to show objectively that the religious practice at issue is central to his faith; rather, the test is whether the prisoner's belief regarding the practice is sincerely held and rooted in religious belief.[3] Shakur, 514 F.3d at 885 (finding that the district court impermissibly focused on whether consuming Halal meat was a central tenet of Islam, rather than on whether plaintiff sincerely believed that eating kosher meat was consistent with his faith).

Plaintiff's allegations, however, fail to satisfy even this liberal test. Critically, plaintiff has not alleged the extent of the purported restrictions. Plaintiff alleges that he requested a Quran and a religious diet on December 2, 2006, when he was placed in administrative segregation. (First Amended Complaint, Facts, ¶¶ 37-46). He alleges that John Doe Nos. 4 and 5 refused to provide him with a religious diet, while John Doe No. 3 said that he could not do anything about the meal plaintiff had already received but that he would look into the matter. (Id. at ¶¶ 38, 39, 46). Thus, it is unclear whether plaintiff is alleging that he was denied a religious diet on a single occasion on December 2, 2006, or during his entire 13-day stay in administrative segregation. See Glover, 2007 WL 3022249 at * 1 (failure to provide inmate with vegetarian meal in compliance with his special religious diet on a single occasion did not rise to the level of a constitutional violation). Similarly, plaintiff does not allege that he made any attempts to obtain a Quran while in administrative segregation beyond his single verbal request to John Does Nos. 4 and 5, nor does he set forth how long he remained without a Quran and whether the deprivation was long enough to hinder his usual religious practices. Indeed, plaintiff does not even allege what response defendants made to his request for a Quran. (See id. at ¶¶ 37).

Plaintiff, therefore, fails to state a free exercise of religion claim.[4]

---

[3] Even if a restriction implicates an inmate's First Amendment right to free exercise of religion, it is constitutionally valid if it is reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987). However, this is not a matter for screening.

[4] The Court notes that plaintiff's free exercise of religion claims are properly asserted only against John Doe Nos. 3, 4, and 5. Plaintiff does not allege that any named defendant participated in the alleged violations. See Taylor, 880 F.2d at 1045.

In addition, plaintiff also purports to state a claim based on comments about his religion made by John Doe Nos. 4 and 5. (First Amended Complaint, Facts, ¶¶ 30-39, Claims at 19). As the

## V. PLAINTIFF FAILS TO STATE A CLAIM BASED ON HIS RETENTION IN ADMINISTRATIVE SEGREGATION

Plaintiff contends that his due process rights were violated when he was retained in administrative segregation for six days after being advised that an investigation had cleared him of all charges. (First Amended Complaint, Facts, ¶¶ 52, 55 , Claims at 20).

The Constitution itself does not create a liberty interest in avoiding transfer to more restrictive conditions of confinement, such as a transfer from the general population to segregation. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Whether the state has created such a liberty interest is determined by focusing on the nature of the deprivation under the analysis set forth in Sandin v. Conner, 515 U.S. 472 (1995). Under Sandin, liberty interests created by prison regulations are limited to freedom from restraints which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In general, temporary placement in administrative segregation does not implicate a protected liberty interest under the Sandin test. See Serrano v. Francis, 345 F.3d 1071, 1-78 (9th Cir. 2003), cert. denied, 543 U.S. 825 (2004) ("Typically administrative segregation in and of itself does not implicate a protected liberty interest."); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence). Such a liberty interest arises only under unusual circumstances. See, e.g. Wilkinson, 545 U.S. at 222-24 (potentially indefinite administrative assignment of high risk prisoners to a state "supermax prison," where they were subjected to harsh conditions and disqualified from parole consideration, gave rise to a liberty interest); Serrano, 345 F.3d at 1078-79 (paralyzed inmate's two month confinement in administrative segregation unit not designed for disabled persons gave rise to liberty interest). Plaintiff's retention in administrative segregation for six days past the date he should have been released is simply not of the same magnitude. Plaintiff has not alleged an "atypical and significant

---

Court advised plaintiff in its previous dismissal order, verbal harassment alone does not violate the Constitution. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (no constitutional claim based on abusive language directed at the prisoner's religious and ethnic background), abrogated on other grounds by Shakur, 514 F.3d at 884-85.

1 hardship on [him] in relation to the ordinary incidents of prison life," and has not alleged a liberty
2 interest under Sandin. Sandin, 515 U.S. at 484.

3 Plaintiff, therefore, fails to state a claim based on his retention in administrative
4 segregation.

## VI. PLAINTIFF FAILS TO STATE A CLAIM BASED ON HIS CLASSIFICATION AND CELL ASSIGNMENT

Plaintiff contends that his due process rights were violated when he was assigned to a yard with a higher security rating than he was entitled to under his classification score. (First Amended Complaint, Facts, ¶¶ 90-92, Claims at 20). A prisoner has no liberty interest in a particular classification status. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (recognizing that reclassification did not implicate liberty interest). Thus, plaintiff cannot state a due process claim based on his assignment to a particular yard.[5]

Plaintiff contends that his due process rights were violated when his cell assignment was changed four times in ten days. (First Amended Complaint, Facts, ¶ 47, Claims at 20). A prisoner has no liberty interest in where he is housed.[6] McKune, 536 U.S. at 39 (noting that "the decision where to house inmates is at the core of prison administrators' expertise"); Meachum v. Fano, 427 U.S. 215, 225 (1976). Thus, plaintiff cannot state a due process claim based on his transfer from cell to cell.

---

[5] Although plaintiff alleges that the yard to which he was assigned had "an unreasonable level of violence," he does not allege that he was ever threatened, or assaulted, or suffered any injury there. Thus, he does not allege a claim for deliberate indifference to his safety.

[6] Nor does plaintiff's characterization of the cell transfers as retaliatory suffice to state a retaliation claim against any defendant. Plaintiff does not identify the prison official responsible for the cell transfers and does not allege any of the elements of a retaliation claim as against that person. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal footnote omitted) (in the prison context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

## VII. PLAINTIFF FAILS TO STATE AN ACCESS TO COURTS CLAIM

Plaintiff contends that the loss of his legal papers violated his right of access to courts. (First Amended Complaint, Claims at 23).

Prisoners have a constitutional right of access to courts to challenge their convictions and their conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 346, 356 (1996); Bounds v. Smith, 430 U.S. 817, 822 (1977). To establish a violation of this right, a plaintiff must demonstrate that the defendant's conduct caused him to suffer an actual injury. Lewis, 518 U.S. at 349-53. "In order to establish actual injury, the inmate must demonstrate that official acts or omissions 'hindered his efforts to pursue a [nonfrivolous] legal claim.'" Phillips v. Hust. 477 F.3d 1070, 1076 (9th Cir. 2007) (quoting Lewis, 518 U.S. at 351); see also Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989). Plaintiff need not establish that he would have been successful on the merits had he been able to present his claim to the courts. Phillips, 477 F.3d at 1076; see also Allen v. Sakai, 48 F.3d 1082, 1085 (9th Cir. 1994). He must, however, describe the underlying claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Christopher v. Harbury, 536 U.S. 403, 416 (2002).

Here, plaintiff alleges that the lost legal papers concerned "his pro se criminal complaint of people, names, places, dates, times, food, and actions against plaintiff while in ad-seg." (First Amended Complaint, Claims at 20). The Court notes that if the lost papers pertained to claims that plaintiff is attempting to pursue through this action, he has not yet suffered an actual injury because the action remains pending. See Mitchell v. Hernandez, 2008 2489210, * 6 (E.D. Cal., June 17, 2008) (unacknowledged grievances did not cause inmate actual injury when the grievances pertained to claims inmate was pursuing in current action). In any event, plaintiff has not described the underlying claim, nor has he alleged in what manner the loss of his papers prevented him from pursuing it. See Christopher, 536 U.S. at 415 (inmate must describe the underlying cause of action as well as the official acts frustrating the litigation). Thus, plaintiff has not alleged an actual injury under Lewis, and has failed to state an access to courts claim.

## VIII. PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE PROCESSING OF HIS GRIEVANCES

Plaintiff contends that his due process rights were violated by the manner in which defendants Marshall, Dieball, and Carey processed his grievances regarding his lost legal papers. (First Amended Complaint, Facts, ¶¶ 1-17).

A prisoner cannot assert a due process claim based on the handling of his grievances. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure"); Smith v. Calderon, 1999 WL 1051947 at *2 (N.D. Cal. 1999) (prison officials' failure to properly process and decide inmate's administrative grievances did not violate any constitutional right); Stewart v. Block, 938 F. Supp. 582, 588 (C.D. Cal. 1996) ("The Constitution creates no entitlement to prison grievance procedures"). Nor can a prisoner hold the officials who processed his grievances liable for the violations that were the subject matter of his administrative appeals. See Hannon v. Kramer, 2006 WL 1409710, *3 (E.D. Cal. 2006) (dismissing Eighth Amendment claim against defendant who interviewed plaintiff concerning his inmate appeal); Meza v. California Dep't of Corrs., 2006 WL 1686608, *5 (E.D. Cal. 2006)("Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action.").

Plaintiff, therefore, fails to state a claim based on the processing of his administrative appeals.

## IX. PLAINTIFF'S OFFICIAL CAPACITY CLAIMS MUST BE DISMISSED

Plaintiff sues all defendants in their official as well as individual capacities. (First Amended Complaint, Parties, ¶¶ 1-17).

Official capacity claims against state officials are merely another way of pleading an action against the state itself. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)). The Eleventh Amendment prohibits federal

jurisdiction over claims against a state without its consent or if Congress has abrogated the state's Eleventh Amendment immunity. <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984). The State of California has not consented to be sued under Section 1983 in federal court, and the Supreme Court has held that Section 1983 was not intended to abrogate a State's Eleventh Amendment immunity. <u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999); <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 n.17 (1985). Thus, official capacity claims for damages are barred by the Eleventh Amendment. <u>Dittman</u>, 191 F.3d at 1026 ("The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court.") In addition, the Supreme Court has held that a state official sued in his official capacity is not "a person" subject to suit under Section 1983 for purposes of a suit for damages. <u>Will</u>, 491 U.S. at 71 & n.10.

The Eleventh Amendment does not bar official capacity suits seeking prospective injunctive relief to remedy continuing violations. <u>Ex Parte Young</u>, 209 U.S. 123, 161-62 (1908); <u>see</u> <u>Doe v. Lawrence Livermore Nat'l Lab.</u>, 131 F.3d 836, 839 (9th Cir. 1997). Plaintiff's official capacity claims do not, however, fall under the <u>Ex Parte Young</u> exception. Plaintiff seeks injunctive relief ordering defendants to refrain from using physical force against him except when necessary and from confiscating his legal property. (First Amended Complaint at 26-27). He has not alleged any continuing violation which this injunctive relief would remedy. In any event, his injunctive relief claims against CMC officials have been mooted by his transfer to Tehachipi. <u>See</u> <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 527-28 (9th Cir. 1996); <u>Dilley v. Gunn,</u> 64 F.3d 1365, 1368-69 (9th Cir. 1995).

However, plaintiff's ADA claim is properly asserted against Dr. Myers in his official capacity. <u>See</u> <u>United States v. Georgia</u>, 546 U.S. 151, 159 (2006) (Title II validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages for conduct that violates the Fourteenth Amendment). In fact, ADA claims may not be asserted against individual defendants in their individual capacities. <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002), <u>cert.</u> <u>denied,</u> 537 U.S. 1104 (2003).

///

Accordingly, with the exception of plaintiff's ADA claim against Dr. Myers, plaintiff's official capacity claims are barred by the Eleventh Amendment and must be dismissed.

* * * * * * * * *

Because plaintiff may be able to cure the deficiencies of the complaint by amendment, the Court will afford plaintiff an opportunity to attempt to do so. See Noll, 809 F.2d at 1448. The First Amended Complaint, therefore, is **DISMISSED WITH LEAVE TO AMEND**.

If plaintiff desires to pursue this action, plaintiff is **ORDERED** to file a Second Amended Complaint within thirty (30) days of the date of this Order, remedying the deficiencies discussed above. **Plaintiff may not add new claims or new defendants without obtaining prior leave of court. Fed. R. Civ. P. 15(a).**

If plaintiff chooses to file a Second Amended Complaint, it should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the original complaint or any other pleading, attachment or document. The Clerk is directed to provide plaintiff with a blank Central District civil rights complaint form, which plaintiff will need to completely fill out and resubmit.

**Plaintiff is admonished that, if he fails to timely file a Second Amended Complaint, the Court will recommend that the action be dismissed on the grounds set forth above and for failure to diligently prosecute.**

DATED: September 8, 2008

                                                    /s/ Jennifer T. Lum
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE